**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC SHIELDS, | : | Civil No. 3:22-CV-00261 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| THOMAS WILLIAMS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

June 2, 2022

## I.  Introduction.

This case comes before the Court for a statutorily mandated screening review of the complaint.  The plaintiff, Eric Shields ("Shields"), filed a complaint based on his arrest, state criminal prosecution, and subsequent imprisonment.  After screening the complaint, we conclude that the complaint fails to state a claim upon which relief can be granted.  We will, however, grant Shields leave to file an amended complaint as to some of the defendants.

## II.  Background.

Shields commenced this action *pro se* on February 23, 2022, by filing a complaint. *Doc. 1.*  He filed an application to proceed *in forma pauperis*, which we granted. *Doc. 7.*  In his complaint, Shields alleges one count of false imprisonment.

*Id.* at 4.  Shields has named five individuals as defendants; one Pennsylvania State Trooper, Thomas Williams ("Williams"); a Luzerne County Judge, David Lupas ("Lupas"); the District Attorney of Luzerne County, District Stefanie Salavantis ("Salavantis"); the Assistant District Attorney who actually prosecuted his case, James McMonagle ("McMonagle"); and attorney Matthew Kelly ("Kelly"). *Id.* at 3, 4.  The claims against these individuals were filed pursuant to 42 U.S.C. § 1983. *Id.*  Shields provides in his complaint one paragraph of general allegations regarding an unconstitutional charging, arrest, and sentencing in his criminal matter. *Id.*  For relief, Shields requests monetary compensation, to have his criminal record expunged, and his release from prison. *Id.* at 5.

For the reasons discussed below, we conclude that the complaint fails to state a claim upon which relief can be granted; however, we will grant Shields leave to amend his complaint.

## III. Screening of *In Forma Pauperis* Complaints—Standard of Review.

Under 28 U.S.C. § 1915(e)(2), the court shall dismiss a complaint brought *in forma pauperis* if it determines that certain specified conditions are met.  More specifically, the court must dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which

provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578

3

F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where

there are well-pleaded factual allegations, a court should
assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

Complaints brought *pro se* are afforded more leeway than those drafted by

attorneys.  In determining whether to dismiss a complaint brought by a *pro se*

litigant, a federal district court is "required to interpret the *pro se* complaint

liberally."  *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018).  A complaint filed by a

*pro se* litigant is to be liberally construed and "'however inartfully pleaded, must

be held to less stringent standards than formal pleadings drafted by lawyers.'"

*Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

Nevertheless, "pro se litigants still must allege sufficient facts in their complaints

to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir.

2013).

## IV.  Discussion.

### A. The complaint fails to state a claim upon which relief can be granted.

Shields' complaint is not clear.  It does not comply with the pleading

requirements of Fed. R. Civ. P. 8.  "Pleadings must be construed so as to do

justice." Fed. R. Civ. P. 8(e).  "This already liberal standard is 'even more

pronounced' where a plaintiff files the complaint without the assistance of

counsel." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson*, 551 U.S. at 94).  "[A] court must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Id*.  Thus, "[c]ourts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Id*.

Even liberally construing Shields' complaint, we nevertheless conclude that the complaint fails to comply with Fed. R. Civ. P. 8, which requires, among other things, that a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(1), 8(a)(2), 8(d)(1).  Shields' complaint does not contain a short and plain statement of the court's jurisdiction. Moreover, his complaint does not contain a short and plain statement of his claims. Shields alleges only a general false imprisonment claim and an unconstitutional arrest, prosecution, and sentencing for failure to comply with the Pennsylvania Sex Offender Registration and Notification Act ("SORNA"). *Doc. 1* at 4, 5. "Fundamentally, Rule 8 requires that a complaint provide fair notice of 'what the . . . claim is and the grounds upon which it rests." *Garrett*, 938 F.3d at 92 (quoting *Erickson*, 551 U.S. at 93).  Here, the complaint does not provide fair notice of what Shields' claims are.  In fact, it is not entirely clear who all of the defendants are,

what claims Shields is making against which defendants, or what relief he is
seeking against which defendants.

Though Trooper Williams is named as a defendant, the only specific
allegation Shields provides against Williams is that he "filed the charges and
arrested [him]." *Doc. 1* at 4. Were Shields to allege specific facts to support his
claims, a § 1983 claim could plausibly be stated against Williams. And though
Kelly is named as a defendant, there is no mention of Kelly in the body of Shields'
complaint at all. Accordingly, the complaint fails to state a claim upon which
relief can be granted with respect to Williams and Kelly. The complaint also fails
to state a claim against the other three defendants, for the reasons discussed below.
*See infra.*

We will also briefly discuss some additional issues with respect to Shields'
complaint of which Shields should be aware should he elect to file an amended
complaint.

## B. 42 U.S.C. § 1983 Claims.

To the extent Shields claims that the defendants violated his constitutional
rights, his claims are brought under 42 U.S.C. § 1983. To aid Shields should he
file an amended complaint, we will briefly set forth some general standards
applicable to § 1983 claims.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To state a claim under § 1983, the plaintiff must allege a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. Thus, *respondeat superior* cannot form the basis of liability. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018). In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "[A] plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). "Personal involvement requires particular 'allegations of personal direction or of actual

8

knowledge and acquiescence.'" *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

### C. The Judges and Prosecutors Named in This Lawsuit are Entitled to Immunity from Suit.

"Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Cty. of Delaware*, 465 F.3d 129, 134-35 (3d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id.* at 135. Although most public officials are entitled only to qualified immunity, public officials who perform "special functions" are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz*, 438 U.S. at 512).

A functional approach is used to determine whether absolute or qualified immunity applies. *Forrester v. White*, 484 U.S. 219, 224 (1988).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it. *Id.*

### 1. Judicial Immunity.

"The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d. Cir. 2000).  The Court has described the reasons for recognizing judicial immunity as follows:

> [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have . . . this is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided.  If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.  The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

*Forrester*, 484 U.S.at 226-27(citations omitted).

We engage in a two-part inquiry to determine whether judicial immunity is applicable. *Gallas*, 211 F.3d at 768.  First, because immunity only applies to actions taken in a judge's judicial capacity, we must determine whether the challenged actions of the judge were taken in his or her judicial capacity. *Id.*  The

relevant factors "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 768 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). "Our task is to 'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts." *Id.* (quoting *Forrester*, 484 U.S. at 227).

"Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* In this regard, "we must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection." *Id.* at 769 (quoting *Stump*, 435 U.S. at 356 n.6). Judicial immunity shields a judge from liability for judicial acts even if those acts were taken in error, if they were done maliciously, if they were in excess of the judge's authority, if the judge committed grave procedural errors, or if the judge's actions were unfair or controversial. *Id.* at 769. A judge will be subject to liability only when he or she has acted in the clear absence of all jurisdiction. *Id.* "In sum, our analysis must focus on the general nature of the challenged action, without inquiry into such "specifics" as the judge's motive or the correctness of his or her decision." *Id.*

From the allegations in the complaint, there is insufficient information that Judge Lupas was acting in anything other than his judicial capacity in his dealings with Shields, and that he was not acting in the complete absence of jurisdiction. Indeed, it appears as though he was acting in his capacity as common pleas judge, and performing acts routinely performed by common pleas judges. Accordingly, Lupas is entitled to judicial immunity from Shields' claims.

### 2. Prosecutorial Immunity.

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997). "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992). The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone,* 538 F.3d 202, 208 (3d Cir. 2008). "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Thus, for example, a prosecutor is entitled to absolute immunity from a claim based on a

prosecutor "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  A prosecutor is also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina,* 522 U.S. at 129.  Absolute immunity does not, however, apply "'to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.'" *Weimer v. Cty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020) (quoting *Odd*, 538 F.3d at 208).

Here, McMonagle was the prosecuting attorney in Shields' criminal case. *Doc. 1* at 4.  Shields has alleged no specific facts that could lead a finder of fact to conclude that his claim was based on anything other than a prosecutor "initiating a prosecution and in presenting the State's case," and as such, has not sufficiently pled a plausible claim for relief.  Since McMonagle's alleged actions were "intimately associated with the judicial phase of the criminal process," and "in a judicial capacity," there is no plausible claim against McMonagle.

Shields also names Salavantis as a defendant. *Doc. 1* at 2.  At the time of the events in question, Salavantis was acting as the District Attorney of Luzerne County.  The same rationale that shields McMonagle from suit also bars any claims against Salavantis.  Further, the decision to initiate a prosecution is at the core of a prosecutor's judicial role. *See Rose v. Bartle*, 871 F.2d 331, 343 (3d Cir. 1989).  As the District Attorney, Salavantis was the decision-maker that made

decisions that led to prosecution of Shields.  Prosecutors are absolutely immune when making this decision, even where they act without a good faith belief that any wrongdoing has occurred. *See Rose*, 871 F.2d at 347 n. 12.  Indeed, even were Shields to jump the hurdle of prosecutorial immunity, his claim against Salavantis would still be barred by the lack of *respondeat superior* and supervisory liability discussed above. *See supra*.  Thus, prosecutorial immunity bars any claims for damages against McMonagle and Salavantis.

### E. Shields will be given leave to file an amended complaint.

Before dismissing a complaint under the screening provision of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002).  Here, given the liberal standard for leave to amend, we will give Shields leave to file an amended complaint to attempt to state a claim upon which relief can be granted against Trooper Williams and Matthew Kelly.

## V.  Order.

Based on the foregoing, **IT IS ORDERED** that Shields is **GRANTED** leave to file an amended complaint as it pertains to Williams and Kelly within 28 days of the date of this Order.[1]


*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

---

[1]  Any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Fed. R. Civ. P. 10(a).  Shields "is advised that any amended complaint must be complete in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  "It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Id*.  "Also in general, an amended pleading—like [any] amended complaint here—supersedes the earlier pleading and renders the original pleading a nullity." *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017).  In other words, if an amended complaint is filed, the original complaint will have no role in the future litigation of this case.  Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure, including the requirements that the complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3).  Further, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  And to the extent it would promote clarity to do so, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id*.  Any amended complaint must also comply with Fed. R. Civ. P. 20.